**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

AGNALDO CARVALHO DE ROCHA,

Petitioner, 9:26-cv-01263 (BKS)

v.

FREDERICK AKSHAR, in his official capacity as Sheriff of Broome County Correctional Facility; and TODD BLANCHE, in his official capacity as Attorney General of the United States,

Respondents.

**Appearances:**

*For Petitioner:*
Michael Z. Goldman
Law Offices of Michael Z. Goldman
100 Church Street, Suite 800
New York, NY 10007

*For Respondent Todd Blanche:*
Karen Folster Lesperance
Assistant United States Attorney
United States Attorney's Office
445 Broadway, Room 218
Albany, NY 12207

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On June 18, 2026, Petitioner Agnaldo Carvalho De Rocha, who had been arrested and detained by Immigration and Customs Enforcement ("ICE") on December 10, 2025, filed an emergency petition for writ of habeas corpus under 28 U.S.C. § 2241 and an application for issuance of an order to Respondents to show why Petitioner should not be granted a bond hearing

at which the Department of Homeland Security ("DHS") "bears the burden of justifying his continued detention by clear and convincing evidence and where an [Immigration Judge ("IJ")], *inter alia*, considers his ability to pay any bond amount and alternatives to detention." (Dkt. No. 1, ¶¶ 1, 3; Dkt. No. 2). Petitioner claims his continued detention violates his Fifth Amendment right to due process. (Dkt. No. 1, ¶ 3).

The day the petition was filed, the Court issued an Order enjoining Respondents[1] from moving Petitioner outside the jurisdiction of the Northern District of New York while this matter is pending[2] and setting a briefing schedule. (Dkt. No. 4). On October 15, 2026, after considering the parties' briefs and status reports, (Dkt. Nos. 10, 11, 13, 15), the Court granted the petition, directed that Petitioner be provided a bond hearing at which the Government would bear the burden of proof, and advised the parties that a written decision would follow. (Dkt. No. 16). This is that decision.

## II. BACKGROUND

As the petition contains few facts, the Court has gleaned the following from the Government's submissions. Petitioner, a citizen and national of Brazil, entered the United States in or about 2003, without admission or inspection.[3] (Dkt. No. 10-1, at 1, 3). Petitioner appears to have had no contact with immigrations between his entry into the United States and his arrest on December 10, 2025. (Dkt. No. 10, at 2 (citing Dkt. No. 10-1)). "[S]everal days" prior to

---

[1] The petition names Frederick Akshar, Sheriff of Broome County Correctional Facility and Todd Blanche, Attorney General as Respondents. (Dkt. No. 1). As Petitioner is no longer housed in Broome County, it appears that Akshar, who has not filed a response, is no longer a proper Respondent. Accordingly, the Court refers to the Respondent in this case as the Government.

[2] At the Government's request (with Petitioner's consent) and on the Government's representation that transfer would not affect this Court's jurisdiction, the Court subsequently modified its order to allow Petitioner's transfer to the Buffalo Federal Detention Facility in Batavia, New York, which is located in Western District of New York. (Dkt. Nos. 6, 7).

[3] The Government indicates that Petitioner's date of entry into the United States is "unknown," but note that that he told Border Patrol Agents that he entered in 2003, (Dkt. No. 10, at 1 (citing Dkt. No. 10-1, at 1)).

Petitioner's, arrest, a Border Patrol Agent had been conducting surveillance in Jefferson County, New York, of "a white pickup truck with out-of-state license plates." (Dkt. No. 10-1, at 3). "Research into the vehicle registration revealed that the white pickup truck was registered" to a construction company "and the registered owner was identified as a wanted person in Brazil who was illegally present in the United States." (*Id.*). The Border Patrol Agent stopped the vehicle "for an immigration inspection," and encountered Petitioner and three others. (*Id.*). Petitioner "admitted to being the United States illegally" and could not produce any immigration documentation authorizing his presence or stay in the United States. (*Id.*). Petitioner has no criminal history. (*Id.* at 4). Petitioner "was processed for a Notice to Appear-Detained" and was held in Broome County Jail. (*Id.* at 5).

Petitioner requested, and on February 20, 2026, received a custody redetermination hearing. (Dkt. No. 10-3, at 1). The IJ denied release, finding that Petitioner presented a flight risk because his application for cancellation of removal "appeared weak and there is no corroborative evidence provided to support that it is meritorious." (Dkt. No. 10-3, at 1). In addition, the IJ noted that Petitioner's work history was "inconsistent" and that while Petitioner had provided "limited tax information for years 2021 and 2023, he ha[d] not provided a tax transcript or other filed returns showing he has paid taxes for the over twenty years he has lived and worked in the U.S." (*Id.*).

On March 30, 2026, the IJ issued an order of removal. (Dkt. No. 10-4, at 1–4). On April 10, 2026, Petitioner filed a notice of appeal with the Board of Immigration Appeals, which remains pending. (Dkt. No. 10, at 2; Dkt. No. 10-5, at 5).

In its response, filed on June 25, 2026, the Government noted that Petitioner had recently requested a custody re-determination and that a hearing was scheduled for June 30, 2026. (Dkt.

No. 10, at 2 (citing Dkt. No. 10-6, at 1)). On June 29, 2026, the Court issued a Text Order directing the Government to file a status report regarding the outcome of the bond hearing. (Dkt. No. 12). On July 2, 2026, the Government filed a status report indicating that because the Petitioner had requested "more time to get an attorney" at the bond hearing, the bond hearing had not gone forward, and the IJ had issued an order stating that Petitioner had withdrawn his bond request and advising Petitioner that when he had an "attorney to assist him, the attorney c[ould] file a new request for custody re-determination." (Dkt. No. 13, at 1 (citing Dkt. No. 13-1)).

On October 9, 2026, the Court directed Petitioner to file a letter "providing a status update and indicating whether he still seeks an order from this Court directing that a bond hearing be held." (Dkt. No. 14). On October 10, 2026, Petitioner responded, stating that he still sought an order requiring a new bond hearing. (Dkt. No. 15). On October 15, 2026, the Court issued a Text Order finding that Petitioner was entitled to a new bond hearing at which the Government would bear the burden of proof, and stating that a written decision would follow. (Dkt. No. 16). This is that decision.

On October 28, 2026, the Government filed a status report indicating that a bond hearing was held on October 23, 2026, and attaching the order entered following the hearing, granting Petitioner's request and releasing him from custody under bond of $50,000. (Dkt. No. 17; Dkt. No. 17-1).

## III. JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018

WL 2932726, at *6, 2018 U.S. Dist. LEXIS 98712, at *15 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## IV. DISCUSSION

### A. Statutory Basis for Detention

The Government "acknowledge[s]" that, under the Second Circuit's decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *petition for cert. granted*, No. 26-104 (U.S. Oct. 1, 2026), Petitioner's present detention is governed by 8 U.S.C. § 1226(a).[4] (Dkt. No. 10, at 3). The Court agrees. Petitioner is a noncitizen who has been present in the United States since approximately 2003, thus he is not "seeking admission" into the country as that term is used in 8 U.S.C. § 1225(b)(2), which allows mandatory detention; instead, because he is not yet subject to a *final* order of removal, Petitioner's detention is governed by 8 U.S.C. § 1226(a), pursuant to which detention is discretionary. *See Barbosa da Cunha*, 175 F.4th at 73 ("Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission.").

### B. Due Process Required

Petitioner argues that the bond hearing he received was constitutionally deficient because the immigration judge improperly allocated the burden of proof to him, rather than the

---

[4] The Courts of Appeals for the First, Third, Fourth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits have also determined that mandatory detention of similarly-situated petitioners under § 1225(b)(2)(A) is unlawful. *Guerrero Orellana v. Moniz*, 188 F.4th 1, 20 (1st Cir. 2026); *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *7, 2026 U.S. App. LEXIS 26353, at *18 (3d Cir. Aug. 28, 2026); *Lopez Garcia v. Guadian*, No. 25-7044, 2026 WL 2661092, at *20, 2026 U.S. App. LEXIS 27850, at *16 (4th Cir. Sept. 10, 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026), *petition for cert. filed*, No. 25-1415 (U.S. June 22, 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 914–15 (7th Cir. 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1250–51 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1262 (11th Cir. 2026). The Courts of Appeals for the Fifth and Eighth Circuits have held that § 1225(b)(2)(A) requires mandatory detention of individuals like Petitioner. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026), *petition for cert. filed*, No. 26-43 (U.S. July 2, 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026).

Government. (Dkt. No. 6, at 1–2). The Government asserts even assuming § 1226(a) applies to Petitioner's detention, because he received a bond hearing, Petitioner received all the process he was due. (Dkt. No. 5, at 19). The Court concludes as it did in *Gunes v. Warden, Broome County Correctional Facility*, No. 26-cv-00525, 2026 WL 1383137, at *6, 2026 U.S. Dist. LEXIS 109760, at *20 (N.D.N.Y. May 18, 2026), that Petitioner is entitled to a new bond hearing at which the Government bears the burden of proof.

The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The "essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)). Habeas review is available to challenge "the lawfulness of detention when it is first imposed" as well as "to challenge whether, at some point, an ongoing detention has become unlawful." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

In evaluating procedural due process, courts apply the "three-factor balancing test as provided in *Mathews v. Eldridge*[.]" *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 335). "The three *Mathews* factors are: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Id.*

As to the first factor, Petitioner's "interest in being free from imprisonment" is "the most significant liberty interest there is," *id.*, and it "cannot be abridged without 'adequate procedural protections," *Singh v. Maldonado*, No. 26-cv-00019, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (E.D.N.Y. Jan. 29, 2026) (quoting *Zadvydas*, 533 U.S. at 690). Petitioner has established his liberty interest. *See id.*, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (finding the petitioner's "liberty interest" in being free from imprisonment was clearly established). Thus, the Court finds the first *Mathews* factor weighs in Petitioner's favor.

The second factor—"the risk of an erroneous deprivation . . . through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"—also weighs in Petitioner's favor. *Velasco Lopez*, 978 F.3d at 851 (internal quotation marks omitted). Although it is undisputed that a bond hearing was held on February 20, 2026, and that the IJ conducted an individualized determination, it is also undisputed that the IJ assigned Petitioner the burden of proving that he was not a flight risk or a danger to the community and denied bond on the ground that Petitioner could not establish that he was not a flight risk. Here, the IJ's findings regarding flight risk were scant; the IJ found only that Petitioner's appeal of the order of removal was "weak," that Petitioner provided only limited tax returns, and his work history was "inconsistent." (Dkt. No. 10-3, at 1). Further, in light of the lengthening detention, approximately ten months, and the risk of deprivation of liberty, the Court finds a hearing at which the burden is shifted to the Government would provide a safeguard against erroneous deprivation of liberty. *Velasco Lopez*, 978 F.3d at 853 ("'[A]s the period of . . . confinement grows,' so do the required

procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." (quoting *Zadvydas*, 533 U.S. at 701)).

The third factor in the *Mathews* analysis requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. It is well-established that "'the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose,'" and that "[t]he Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690). "'[I]n striking the appropriate due process balance the final factor to be assessed is the public interest,'" which "include[s] 'the administrative burden and other societal costs that would be associated with' the additional process." *Velasco Lopez*, 978 F.3d at 855 (quoting *Mathews*, 424 U.S. at 347). Here, the Government has not identified any interest that "might counsel against its bearing the burden of proof by clear and convincing evidence." *Ortiz v. Freden*, 808 F. Supp. 3d 579, 600 (W.D.N.Y. 2025); *see Velasco Lopez*, 978 F.3d at 854–55 ("The Government has not convinced us that requiring it to justify [a petitioner's] detention by clear and convincing evidence substantially undermines its legitimate interests or entails an undue administrative burden."). The Court notes that district courts in this Circuit have concluded that the Government should bear the burden of proof, even early in proceedings. *See, e.g.*, *G.F.F. v. Francis*, No. 25-cv-7368, 2025 WL 3141735, at *5 n.2, 2025 U.S. Dist. LEXIS 221779, at *12 n.2 (S.D.N.Y. Nov. 10, 2025) ("[T]he Government's assertion that eleven months' detention is insufficiently lengthy to trigger a bond hearing that places the burden of

proof on the Government is difficult to reconcile with the 'overwhelming consensus of judges in this District' that noncitizens detained under § 1226(a) are entitled to such a proceeding even at their initial bond hearings." (quoting *Fernandez Aguirre v. Barr*, No. 19-cv-7048, 2019 WL 3889800, at *3, 2019 U.S. Dist. LEXIS 140065, at *7 (S.D.N.Y. Aug. 19, 2019)); *Quintanilla v. Decker*, No. 21-cv-417, 2021 WL 707062, at *3, 2021 U.S. Dist. LEXIS 32633, at *9 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this district in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention") (quotation marks omitted).

Having considered the relevant factors, the Court concludes that Petitioner "is entitled under § 1226 to a prompt bond hearing consistent with due process 'at which the Government bears the burden of proving, by clear and convincing evidence, that [he] is a danger to the community or a flight risk.'" *Rahman v. Catletti*, No. 26-cv-3054, 2026 WL 1180138, at *2, 2026 U.S. Dist. LEXIS 96787, at *6 (S.D.N.Y. Apr. 30, 2026) (quoting *Guedez v. Catletti*, No. 26-cv-02463, 2026 WL 962575, at *2, 2026 U.S. Dist. LEXIS 80723, at *4 (S.D.N.Y. Apr. 9, 2026)). The IJ shall also consider the sufficiency of alternatives to imprisonment and Petitioner's financial ability to pay any bond. *Id.* 2026 WL 1180138, at *3, 2026 U.S. Dist. LEXIS 96787, at *8. Because the burden of proof was assigned to Petitioner during the February 20, 2026 bond hearing, it did not comport with due process and a new hearing is required. *See*, *e.g.*, *id.* 2026 WL 1180138, at *2–3, 2026 U.S. Dist. LEXIS 96787, at *6 (ordering new bond hearing where immigration judge denied bond on incorrect premise that the petitioner was subject to mandatory detention and directing that the Government bear the burden of proof by clear and convincing evidence at new hearing).

As set forth above, Petitioner has now had the bond hearing ordered by the Court.

## V. CONCLUSION

Accordingly, it is

**ORDERED** that the petition (Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED** that the Clerk is directed to enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: October 29, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge